SARAH MITCHELL, A LUNATIC, &C., RESPONDENT, v. EDWARD Y. BARNES, APPELLANT, IMPLEADED, &C.

*Receiver pendente lite—when one may be appointed in an action to set aside a conveyance of real property.*

This action was brought by the plaintiff, as the committee of one Sarah Mitchell, to have certain conveyances of real and personal property, made by her to the defendant, adjudged void and set aside, on the ground that the defendant, knowing that the said Mitchell was of unsound mind and incapable of managing her affairs, fraudulently induced her to transfer the

said property to him without receiving any consideration therefor. In 1878 the said Sarah Mitchell was found by an inquisition to be, and for the past eight or nine years to have been, of unsound mind, and incapable of managing her affairs. The defendant, who was wholly insolvent and had been in possession of the property, and collected the rents and profits thereof, from the time the conveyances were made, in 1870 and 1871, denied that he obtained the conveyances by duress, undue influence, or by means of any trick, unlawful or fraudulent practice, and alleged that they were voluntarily executed and delivered by the grantor in the exercise of an unfettered will and an unclouded reason.

*Held*, that the case was a proper one in which to appoint a receiver *pendente lite*. (LEARNED, P. J., dissenting.)

(*Bockes* v. *Lansing*, 74 N. Y., 437, and *Van Deusen* v. *Sweet*, 51 Id., 378,—distinguished.)

APPEAL from an order made at Special Term, appointing a receiver of certain property, both personal and real, described in the complaint in this action.

The property is alleged to have been obtained by fraud and coercion and without consideration, by the defendant and appellant Barnes, from the plaintiff Sarah Mitchell, after she had become and when she was a lunatic and of unsound mind, in 1870 and 1871. The personal property was conveyed, by parol gift with part delivery; the realty, in parcels, by warranty deeds purporting to have been given upon paid considerations, amounting to $24,000; no part of which had been in fact paid.

The plaintiff sought to have the transfers adjudged void and the deeds canceled of record, and the property, both personal and real, restored; and for an accounting and a judgment for the rents and profits of the realty, and for such of the personalty as could not be restored, against Barnes; and that his wife, who was joined as a defendant with him in the action, be adjudged not entitled to dower in any of the realty. It was also alleged that Barnes was insolvent, and that unless a receiver was appointed, the rents and profits from the realty, during the pendency of this action, would be lost to the lunatic. It was also alleged that proceedings had been had, whereby it was found and adjudged that Sarah Mitchell, on May 1, 1878, was, and continuously for nine years theretofore had been, a lunatic and of unsound mind, incapable of the government of herself or the management of her affairs; and wherein the plaintiff, John W. Mitchell, was appointed her committee, who,

upon qualifying, made demand of Barnes for the relief sued for in this action, which was refused.

Upon a motion for the appointment of a receiver, the defendant made an affidavit, in which, among other things, he said : "that the allegations in the said complaint, charging him with having procured these several conveyances by undue influence, by duress, by means of tricks and devices, or fraudulent practices, as particularly set forth in said complaint, from folio 17 to folio 20, are, and that each of them is absolutely and utterly false in each and every particular and have no foundation whatever in fact ; and deponent further says that he did not practice any fraud or deception, or undue influence, or duress in obtaining the said conveyances, but that they were, and each of them was, voluntarily executed and delivered to the deponent by the said Sarah Mitchell, and (as deponent verily believes), in the exercise of an unfettered will and an unclouded reason. . . . . .

"Deponent further says that he can show by many reputable and reliable witnesses, upon the trial of this action, and that a portion of his defense to this action will be made by showing, that the said Sarah Mitchell, at the time the various transactions mentioned in the complaint are alleged to have taken place, was a woman of sound mind and memory, and entirely capable of transacting business, and was also possessed of unusual shrewdness and mental vigor. . . . . .

"Deponent further says that he came to Lansing from Dutchess county at the request of said Sarah Mitchell ; that he learned from her that upon the death of her brother Isaac, with whom she resided, which occurred about the year 1860, an attack was made upon the will of said Isaac, and upon the said Sarah as the principal legatee in said will ; that they accused her of procuring such will by fraud and undue influence, and the contest was long and bitter, and carried on against her by the rest of the Mitchell family ; that it was finally settled and compromised, but at great expense and loss ; that thereupon a new litigation sprang up between her and Chloe Mitchell, the mother of the committee in this action, as to a partition of the premises ; that said contest was bitter and ended only in the Court of Appeals ; that said Sarah declared that

none of the Mitchell family should have her property, and that she meant to give it to deponent at her death, and meantime allow him to work the lands and receive the proceeds, deponent agreeing on his part, in consideration thereof, to keep a home for said Sarah on said premises, and support and maintain her there during her natural life; that deponent, relying on said promise and assurance, sold out his property in Dutchess county at a sacrifice and came to Lansing to live; that deponent brought with him about $5,000 from Dutchess county, as the proceeds of the sales of the property there, and that the great bulk of said amount has been expended by him in the purchase of stock and implements for said Mitchell farm, and in making permanent improvements thereon; that he supported and maintained the said Sarah until she voluntarily left his house and went elsewhere; that the taxes and insurance and ordinary repairs on said farms, together with the care, support and maintenance of the said Sarah, amounted to more than the net annual rental value of said farm."

*F. M. Finch*, for the appellant.

*M. Goodrich*, for the respondent. An inquisition taken and confirmed, pursuant to a commission *de lunatico inquirendo* issued, establishes, *prima facie*, the lunacy found and the invalidity of the lunatic's business acts for the previous period covered by the finding. (*L'Amourex* v. *Crosby*, 2 Paige, 422; *Matter of Patterson*, 4 How. Pr., 34; *Hart* v. *Deamer*, 6 Wend., 497; *Osterhout* v. *Shoemaker*, 3 Hill, 513; *Demilt* v. *Leonard*, 11 Abb. Pr., 252; *Fitzhugh* v. *Wilcox*, 12 Barb., 235; 2 Kent Comm., 450; *Van Deusen* v. *Sweet*, 51 N. Y. 378.) A court of equity has power to appoint a receiver of property, during the pendency of the action. (*Stillwell* v. *Wilkins*, 6 Madd., 49; *S. C.*, on appeal, Jac., 280; also, *Chaplin* v. *Young*, 6 L. T., N. S., 97; 33 Beav. 330; *Blanchard* v. *Cawthorne*, 4 Sim., 572; *Sloan* v. *Moore*, 37 Penn., 217; *Ireland* v. *Nichols*, 37 How. Pr., 222; *People* v. *Mayor, &c.*, 10 Abb. Pr., 111; *Matter of Cohen*, 5 Cal., 494; *Micklethwaite* v. *Rhodes*, 4 Sandf. Ch., 434. And see Code, § 718.)

BOCKES, J. :

Appeal from an order of the Special Term, appointing a receiver.

The defendant is right in his statement made in his affidavit, "that this is not an action of ejectment." Hence the authorities to the effect that a receiver will not be appointed before judgment in a pure action at law in ejectment, *Burdell* v. *Burdell* (54 How. Pr., 91), *Guernsey* v. *Powers* (9 Hun, 78), *Thompson* v. *Sherrard* (35 Barb., 593), are not in point. Nor has the decision in *Bockes* v. *Lansing* (74 N. Y., 437) application here. In that case the court held that the action, being an action to remove a cloud upon the title, could not be maintained because the deeds sought to be set aside " did not on their face transfer any title as against the plaintiff." (p. 441.) It is otherwise in the case in hand.

Nor is the decision in *Van Deusen* v. *Sweet* (51 N. Y., 378) an authority against the plaintiff's right of action and claim for a receiver. It was there decided that an action of ejectment might be maintained in a case like the present; but no intimation was there given that full and ample relief in equity against a deed fraudulently obtained might not also be maintained. It is true, the learned chief commissioner there says, that in case of an *absolutely void* deed, one that never had legal existence or vitality, there would be nothing to set aside by the interposition of a court of equity, or by recourse to an equitable action. But it was not intended to assert the doctrine that an action to set aside a voidable deed, one obtained by fraud and improper practice, or by undue influence, from a person of weak intellect or of unsound mind, could not be maintained in equity. If this was intended, it would be a mistaken assertion, in conflict with well-settled principles of equity jurisprudence.

The action in this case is based on purely equitable considerations. It is brought to set aside conveyances voidable at the election of the proper party to assert their invalidity, because fraudulently obtained without consideration from a person of unsound mind. Such is the theory of the action; and a case for the relief demanded is made on the averments of the complaint. Whether they will be sustained on the trial is a different question. The question before

us rests upon the papers submitted on the motion for a receiver. On these papers it appears that the defendant obtained from the plaintiff, who sues by her committee, a large amount of property, principally real estate, valued at about $20,000, without consideration; that the grantor, as is found by inquisition obtained in due form, was at the time of unsound mind, incapable of managing her affairs, to the defendant's knowledge, and that, independent of the property so obtained, the defendant is wholly insolvent. These alleged facts stand on this motion substantially undenied, and with other undisputed formal averments in the complaint, make a proper case for the appointment of a receiver. It is true the defendant denies in general terms that he obtained the conveyances by duress, undue influence, or by means of trick, artifice or fraudulent practice; and he asserts that they were voluntarily executed and delivered by the grantor, in the exercise of an unfettered will and an unclouded reason. But there is no denial of the alleged facts that the deeds were without consideration, or that the grantor was, according to the inquisition, a person of unsound mind and incapable of managing her affairs with judgment and propriety. The inquisition was presumptive evidence of her incapacity. (*Van Deusen v. Sweet*, 51 N. Y., 386, and cases there cited.) It is also established that the defendant is insolvent, independent of the property charged to have been fraudulently obtained by him, and that the annual avails and profits derivable therefrom is from $600 to $800, exclusive of taxes and assessments. It also appears that he has been in receipt of such rents and profits for several years, and has thus been fully recompensed for all repairs and improvements made by him. As the case was made at Special Term on the motion for a receiver, the order was properly granted.

The order appealed from should be affirmed, with $10 costs, and expenses for disbursements.

Martin, J., concurs.

Learned, P. J., dissenting:

The appointment of a receiver is, in a certain sense, discretionary. But discretion is not without rules. And I must state briefly why I think those rules have not been observed.

An action of ejectment would lie in this case. (*Van Deusen* v. *Sweet*, 51 N. Y., 378.) This present action seeks the same relief as would be obtained in an action of ejectment—that is, the recovery of the land from one who claims to own it in fee. In an action of ejectment a receiver would not be appointed. (*Guernsey* v. *Powers*, 16 Sup. Co. N. Y., 78.) By analogy, none should be appointed in this action.

The ordinary rule is that a receiver will not be appointed where a defendant is in possession under a legal estate. (Edw. on Rec., 24 and cases cited.) This rule is only departed from in cases of fraud, clearly proved and of imminent danger, and strong ground of title in the plaintiff.

In the present case the facts in the complaint tending to show fraud, are on information and belief. The only additional facts. proved by affidavits on the part of the plaintiff, material to the question of fraud, are to the effect that the defendant paid nothing and that he said that Sarah Mitchell was a crazy old fool. This, the defendant denies on oath. He also denies all fraud. And the only fact which can be said to be proved is, that there was no money consideration. The defendant in his affidavit avers that the consideration was that he should support Sarah Mitchell during her natural life. There is also the fact that the jury *de lunatico* found that Sarah Mitchell had been a lunatic for nine years previous. This finding was in 1878. The deeds had been executed in 1870 and 1871. It is true that this is admissible evidence. But any one who has had any experience knows how easy it is for those who conduct such proceedings to procure a verdict which will "overreach" any conveyance which the parties conducting the proceedings may desire to attack. Of course, the defendant was no party to the proceedings. It appears, too, by the papers, that there had formerly been some disagreement between Sarah Mitchell, the alleged lunatic, and the parties who now control these proceedings; the merits of which cannot be understood till the trial.

We have then, only these facts, that the defendant, in consideration of an agreement to support Sarah Mitchell, received the deeds. in question, and that she was eight years after declared to be, and to have been, a lunatic. Now, the appointment of a receiver takes

away the property from the defendant, who claims to own it in fee,. and withholds it from him during the litigation. It decides upon the merits that he is not the owner. And so long as the plaintiff chooses to protract the litigation, the defendant, without a trial, is kept out of property to which he has a legal title. If it is right to appoint a receiver in this case, I see no reason why one should not be appointed in every action of ejectment, where the plaintiff can show that the defendant is poor and irresponsible. I think that courts should be very cautious how they take away from a defendant, without a trial, the possession of land to which he confessedly has a legal title.

I think, therefore, that the order should be reversed.

Present—LEARNED, P. J.; BOOKES and MARTIN, JJ.

Order affirmed, with $10 costs, and disbursements.