(32 Misc. Rep. 21.)

### MERRITT et al. v. MERRITT et al.

(Supreme Court, Special Term, New York County.   June, 1900.)

MENTAL CAPACITY OF MORTGAGOR.

That a mortgage may be void on the ground that the mortgagor is non compos mentis, he must be totally unable to understand the nature of the transaction; and it is not enough that he does not understand or comprehend the transaction and its details, but he must lack the capacity to understand and comprehend its nature.

Action by Helen S. Merritt and others against John Merritt, executor, and others, to foreclose a mortgage.   Judgment for plaintiffs.

George Murray Brooks (Delos McCurdy, of counsel), for plaintiffs.
Wilmot & Gage (Edward C. James, of counsel), for defendants.

LEVENTRITT, J.  This case has now been tried three times. There have been two reversals, with the result, at least, that the legal aspects of the litigation have been defined.   To refer again briefly to the essential facts:   The action is to foreclose a mortgage in the sum of $25,000, executed on the 26th day of May, 1891, in the name of Hannah B. Merritt, by her attorney in fact, George Merritt, under a revocable power dated October 25, 1888.   The bond and mortgage were subsequently assigned by William Post, the mortgagee, to the plaintiffs in this action.   The defense pleaded is that on the 26th day of May, 1891, Hannah B. Merritt had "wholly lost her mind, and was non compos mentis," and that William Post "well knew that said Hannah B. Merritt was non compos mentis as aforesaid."   On the first trial, the plaintiffs, after proving the power of attorney, the bond and mortgage, and the default, rested.   The defendant then attempted to prove his defense, but his evidence of the mental condition of Hannah B. Merritt and of Post's knowledge thereof was excluded.   On appeal, the judgment was reversed on the ground that the proof should have been permitted.   27 App. Div. 208, 50 N. Y. Supp. 604. The court said:

"It must be held that, when one undertakes to deal with an agent having a written power of attorney, he, equally with the agent, knowing of the insanity of the principal, that the transaction thus made has no more weight than if the transaction had been directly with the insane principal himself." At page 213, 27 App. Div., and page 607, 50 N. Y. Supp.

On a retrial the plaintiff rested on the same proof as before.   The defendant introduced evidence of Mrs. Merritt's mental incapacity, but his counsel stated that no proof of knowledge on the part of Post of Mrs. Merritt's insanity would be offered.   The court thereupon gave judgment for the plaintiff, holding that Mrs. Merritt's insanity, standing alone, was no defense, and that the defendant was bound to show Post's knowledge thereof.   On appeal this judgment was also reversed. 43 App. Div. 68, 59 N. Y. Supp. 357.   Construing its previous decision, the court say:

"What we held when this case was before us upon the former appeal was * * * that the authority of an agent acting under a power of attorney ceases or is suspended by the insanity of his principal; and where the fact of such insanity is known both to the agent and to the party dealing with him the contract entered into by the agent on behalf of his principal is not binding on the latter."

But it was held that on the second trial an erroneous rule as to the burden of proof had been applied, and that as the mortgage was, at the election of the lunatic's personal representatives, voidable only, the latter could have, in the first instance, rested upon proof of the lunacy, and that thereupon it would have become incumbent on the mortgagee or his assigns to show the facts in equity necessary to sustain the judgment. "The defendant clearly had a right to prove notice of the insanity, but we did not hold that he was bound to do so. If his testimony sufficiently established Mrs. Merritt's insanity within the definition formulated in Aldrich v. Bailey, 132 N. Y. 85, 30 N. E. 264, he was, in our judgment, then and now entitled to rest; and, if his testimony on that head was not balanced by testimony subsequently adduced by the plaintiffs, he was entitled to a finding to that effect. If, upon all the testimony adduced by both sides, the court had found itself unable to make such a finding, all other grounds of equity would have disappeared, and the plaintiffs would have been entitled to judgment." At page 73, 43 App. Div., and page 361, 59 N. Y. Supp.

On this, the third trial, the plaintiffs again rested after putting in evidence the power of attorney, the bond and mortgage, the assignment thereof to them, and proving the default. The defendant then sought to prove by various witnesses, lay and expert, Hannah B. Merritt's mental condition at the time of the execution of the bond and mortgage; and the plaintiffs then offered proof tending to rebut the defendant's evidence in this regard. No attempt was made by either side to show Post's knowledge or ignorance of Mrs. Meritt's alleged mental condition, and therefore, following the last opinion of the appellate division, the question to be determined from the evidence adduced on this trial is simply this: Has the defendant succeeded in establishing Mrs. Merritt's lunacy, within the rule of Aldrich v. Bailey, 132 N. Y. 85, 30 N. E. 264? If he has, then, as he was entitled to rest on the proof of lunacy, he is entitled to judgment dismissing the complaint. If, on the other hand, the plaintiff succeeded in balancing that testimony, or if, upon all the evidence, such a finding cannot be made, then there must be judgment for the plaintiffs. Before adverting to the testimony, it is essential that the rule in Aldrich v. Bailey be understood. It is founded on the case of Van Deusen v. Sweet, 51 N. Y. 378. In that case the court of appeals adopted the language of the court below, that if the defendant "was, at the time of the alleged execution of the instrument, totally and positively incompetent, which is expressed by the technical and significant phrase, 'non compos mentis,' " the instrument never had any existence as an instrument, and was legally inoperative and ineffectual to pass title to the premises. In Aldrich v. Bailey, construing the rule in Van Deusen v. Sweet, and applying it to the facts then before the court, it is said:

"Assuming, for the purposes of this case, that the rule is there correctly stated, and that a deed would be not merely voidable, but absolutely void, when executed by an insane person, yet under the rule in that case a deed is absolutely void only when it appears that the person executing it was at the time so deprived of his mental faculties as to be wholly, absolutely, and completely unable to understand or comprehend the nature of the transaction."

To establish Mrs. Merritt's lunacy, then, within the rule of Aldrich v. Bailey, followed by the appellate division, the defendant must show that on the 26th day of May, 1891, Hannah B. Merritt was so deprived of her mental faculties as to be wholly, absolutely, and completely unable to understand or comprehend the nature of. the transaction consummated on her behalf by her attorney in fact. A mere partial deprivation or impairment of her mental faculties would be insufficient. The rule plainly recognizes that there may be deprivation of mental faculty without invalidating the transaction in respect to which the impaired mind is supposed to have acted. The important words of the rule are "wholly, absolutely, and completely." If the impairment was only partial, if the incapacity was not absolute, and less than complete, so that the nature of the transaction might be understood, even though all the details could not be grasped or appreciated, then the instrument would still have validity. There must be a total deprivation of sense, an entire, not a partial, loss of understanding. Jackson v. King, 4 Cow. 207; Riggs v. Society, 84 N. Y. 335. Bearing this rule in mind, I am not satisfied on all the evidence that there was either complete obliteration of mentality on the part of Mrs. Merritt, or that she was totally unable to understand the nature of the transaction in question. There is no doubt that Mrs. Merritt's mental and physical condition, after she suffered the stroke of apoplexy in the early part of the year 1890, was enfeebled, and that her mental faculties were materially impaired. The testimony of disinterested witnesses, especially that of the Misses Vidaud, of Mrs. Hunter, and of Miss Edgerton, has satisfactorily established that. It is unquestionably true that her reason, will, memory, and understanding were weakened to a serious degree. But, although her mind and her intelligence were at that time of a low order, I cannot conclude, on all the evidence before me, that there was that total deficiency of sense necessary to the defendant's success in the action. As our law does not distinguish between different degrees of intelligence, her mere imbecility of mind, even though great, would not avoid the mortgage. Osterhout v. Shoemaker, 3 Denio, 37, note.

Certain considerations must not be lost sight of. The defendant, in his brief, seeks to apply a test to the validity of the transaction which could not be sustained even in the case of a person in full possession of all faculties. Mrs. Merritt, just prior to her stroke of apoplexy in 1890, was of very advanced years, being at that time about 82 years of age. No question is made but that she was legally competent to enter into any contractual relation at that time. The defendant's testimony is that before her affliction she had a mind bright and active for a lady of her years; that "she was in the ordinary mental and physical condition of a lady of her age." In the absence of fraud or undue influence, it is clear that the transaction would have been upheld if had before January, 1890, although it must be evident that if such an understanding of the complicated conditions that eventuated in the mortgage in suit, as the defendant would exact from Mrs. Merritt, is the correct test of legal capacity, it is very questionable whether she could have met it then, or even

in the days of fuller mental vigor. Were the test an actual comprehension of all the details of a transaction, like here under review, many a sane woman in the prime of life, simply because she was unfamiliar wih real-estate matters, would be able to avoid her solemn agreements. But the test is not an actual understanding or comprehension of the transaction and its details, but a capacity for understanding and comprehending the nature of the transaction. In this case the defendant loses sight of the limitation implied in the word "nature" in the statement of the rule in Aldrich v. Bailey. It does not require an appreciation in circumstantial detail of all the facts surrounding the mortgage. The question is, did Mrs. Merritt have sufficient mentality to have understood the general nature of the transaction? Was the condition of her mind such that she could have grasped that she was borrowing money to pay off a loan, and that her property would be resorted to in the event that she did not repay it? The evidence does not satisfy me that her mind was not. There was disinterested, credible testimony, as that of Miss Hudson and Mrs. Smith, not to mention relatives who contradicted relatives on the other side, to balance that of the defendant, and tending to show that the speech and actions of Mrs. Merritt immediately prior to May 26, 1891, were something more than automatic, reflex, or the mere survivals of organized habit.

Finally, the only testimony concerning Mrs. Merritt's acquaintance with the particular transaction here in suit is given by the witness Wemmell, Mrs. Merritt's managing clerk during the last 10 or 12 years of her life. It was he who collected the rents for her, and who communicated to her about a month before the execution of the mortgage the fact that Mr. Post would lend the money to pay off the mortgage then on her William street property. Wemmell's testimony is to the effect that she understood him, and that she expressed her acquiescence and assent. There is also in his account of that interview corroboration of the plaintiffs' version of her mental condition. Her responses to his statements, especially where she threatens to scold him for his long absence, and where she corrects his manner of address, indicate the possession of memory, understanding, and reason. On the whole case I do not think the proof would warrant my finding that on May 26, 1891, Mrs. Merritt was so deprived of her mental faculties as to be wholly, absolutely, and completely unable to comprehend the nature of the transaction executed in her behalf by her attorney in fact. There should be judgment for the plaintiffs.

Judgment for plaintiffs.